[Civ. No. 3775.   Fourth Dist.   May 17, 1949.]

THELMA ROWLAND, Appellant, v. MRS. PEARL
CLARK, Respondent.

T. R. Claflin for Appellant.

West, Vizzard, Howden & Baker for Respondent.

MUSSELL, J.—This is an appeal from a judgment for defendant in an action for partition.

Plaintiff is the granddaughter of defendant and at the time this action was tried, was married and of the age of 19 years. At the age of 9, plaintiff, whose parents were deceased, with her two sisters and a brother came to live with defendant in Oklahoma. Defendant, a widow, assumed responsibility for the care and education of the children and brought them to California in 1942. In 1944, defendant, who supported herself and the children by doing laundry work, taking care of children, and odd jobs, purchased the property here involved. The initial payment of $750, and the balance of the purchase price, approximately $300, was all paid by defendant from her meager earnings. At the time of the execution of the deed, defendant had the title to the property placed in her name and that of plaintiff, as joint tenants. When questioned at the trial as to her reason for the execution of a joint tenancy deed, defendant testified as follows:

"Q. (By MR. VIZZARD) Did you ever have any conversations with Thelma about taking this house in joint tenancy?

She was fourteen when you bought the house? A. I told her we would buy the place and fix it up for a home; it would be our home. Q. How old was she when you bought the house? A. Well, she was—I don't believe she had come fourteen. Q. Thirteen or fourteen; is that correct? A. Thirteen or fourteen; I don't know whether she had had her fourteenth birthday. Q. Did you talk to her and tell her why her name was put in the deed as a joint tenant? A. I did. Q. What did you say to her? A. I told her I would put her name on the deed so she could get the property at my death; it would be hers. Q. Did you tell her you desired to live and continue living there? A. I did. It was my home. Q. What did she say to that? A. She didn't say anything. I don't remember anything. Q. She didn't say 'aye,' 'yes or no'? A. No, she was just a kid, and she wasn't interested in anything like that.''

Plaintiff lived with defendant until August, 1946, and during that time was working part time taking care of children, and working in a plant in Oildale. She contributed a little money ''when she wanted to'' for her food and living but paid nothing on the purchase price of the house or the improvements, taxes or upkeep of the premises.

Plaintiff here seeks the aid of a court of equity against her benefactress to compel the sale of the four-room frame house acquired by defendant as her home.

The position now taken by plaintiff is that she has the absolute right under the provisions of section 752 of the Code of Civil Procedure to a partition of the property. However, the right to partition property is not always absolute and may be defeated by reason of an agreement between the cotenants, permitting a variance from the ordinary incidents of such cotenancy. (*Asels* v. *Asels*, 43 Cal.App. 574, 578 [185 P. 419]; *Miranda* v. *Miranda*, 81 Cal.App.2d 61, 65 [183 P.2d 61].) The trial court found in the instant case that there was a parol agreement between plaintiff and defendant whereby the property was taken under a deed naming plaintiff and defendant as joint tenants, but under said parol agreement the defendant was to retain the property for her lifetime and to enjoy a life estate therein and plaintiff was to hold the remainder interest therein, which remainder interest, by operation of the joint tenancy deed would be terminated by the condition of plaintiff predeceasing the defendant; that defendant paid for the property from her own funds.

We conclude that where, as here, the title to the property was taken in the name of one party and the considera-

tion for the transfer furnished by the other, a trust is presumed to result in favor of the latter. (*Goes* v. *Perry,* 18 Cal. 2d 373, 379 [115 P.2d 441].) ██ While there must be clear and convincing proof to establish a trust, such proof may be indirect, consisting of acts, conduct and circumstances, the question whether the showing is clear and convincing being primarily one for the trial court. (*Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154, 173 [168 P.2d 946].) As was said in *Bradley* v. *Duty,* 73 Cal.App.2d 522, 526 [166 P.2d 914] :

"A resulting trust is implied from the facts, and neither written evidence of an agreement nor a fraud on the part of the alleged trustee is essential to its existence. It arises where title of a property is vested in the trustee while the consideration therefor is paid by the beneficiary."

And in *Berniker* v. *Berniker,* 30 Cal.2d 439 [182 P.2d 557], the court, quoting from *Lezinsky* v. *Mason Malt W. D. Co.,* 185 Cal. 240, 251 [196 P. 884], there said:

"A resulting trust is not founded on the simple fact that money or property of one has been used by another to purchase property. It is founded on a relationship between the two, on the fact that as between them, consciously and intentionally, one has advanced the consideration wherewith to make a purchase in the name of the other. The trust arises because it is the natural presumption in such a case that it was their intention that the ostensible purchaser should acquire and hold the property for the one whose means it was acquired."

██ The evidence here presented indicates clearly that defendant did not intend to relinquish her right to occupy the property in question during her lifetime. It was her only home during her declining years, purchased and improved from her limited earnings over a period of several years.

There was testimony by plaintiff, in rebuttal, that her grandmother stated in effect that the property should be put in both names as joint tenants, and that at any time appellant decided to move out of the premises, the house would be sold and the funds equally divided. As to this testimony there was a conflict in the evidence which was resolved in favor of defendant by the trial court. Plaintiff also testified to the effect that her grandmother took $700 in cash from her person, stating that she, defendant, was entitled to one-half of plaintiff's earnings. This testimony was denied by defendant and the conflict rightly determined by the trial court in defendant's favor.

■ The final contention of plaintiff is that she, being a minor, had a right to disaffirm any agreement during her minority, and that the filing of the present action amounted to such a disaffirmance. This point was not presented in plaintiff's opening brief, and there are no allegations in the complaint upon which to base findings in this respect. If we assume, for present purposes, that there was such a disaffirmance, plaintiff is nevertheless bound by the principles of equity applicable and the resulting trust is not affected.

■ While in the instant case the title to the property involved was not taken in plaintiff's name alone, we are of the opinion that the principle of a resulting trust applies to the title acquired by plaintiff insofar as the life estate in the defendant is concerned.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred