[Civ. No. 1063. Fifth Dist. June 4, 1969.]

ADOLPH LEHMANN et al., Plaintiffs and Respondents; v. GERHARD J. KAMP et al., Defendants and Appellants.

Lauritzen & Gimblin and Richard S. Gimblin for Defendants and Appellants.

Don C. Mayes for Plaintiffs and Respondents.

GARGANO, J.—Plaintiffs Adolph and Etelka Lehmann brought this action in the court below against defendants Gerhard J. Kamp and Lenore Kamp to set aside two deeds on certain real property which they executed in 1946 and 1953 respectively, and to partition the property if only the 1953 deed was set aside. The pertinent facts are as follows:

Plaintiffs owned a 106-acre ranch in Mariposa County upon which they had made their home for many years. In 1945 they orally agreed to a joint use of the ranch with defendants and to leave it to defendants upon their deaths. In return defendants agreed to provide financial support to plaintiffs and to furnish them physical care in their old age. Defendants then commenced to jointly use the ranch under the oral joint use agreement and to pay plaintiffs $50 a month for their support.

In January 1946 plaintiffs, by a joint tenancy deed, conveyed an undivided one-half interest in their ranch to defendants. Plaintiffs executed the deed pursuant to the advice of an attorney; he told them that if the property was placed in a joint tenancy ownership with defendants, the parties would have the right to joint use, and since defendants were considerably younger they would take complete ownership upon

the death of plaintiffs under the right of survivorship. The attorney also told plaintiffs that they would be protected because they could terminate the joint tenancy and deprive defendants of one-half of the property if defendants did not fulfill their oral agreement to provide support and care. Thereafter, the parties continued to use the ranch jointly, each contributing to its improvement and operation as joint venturers for profit. Moreover, defendants continued to pay plaintiffs $50 per month for their support. The support payments, however, were discontinued in 1949 when plaintiffs became eligible for Social Security and Old Age Security Welfare Assistance.

In 1953 the welfare authorities informed plaintiffs that they would have to utilize their undivided one-half interest in the ranch but that the utilization requirement would be met if 50 cents per acre were charged; this would have reduced plaintiffs' public assistance payments by only $53 a year. Plaintiffs agreed but defendants did not. Thus, the parties consulted an attorney for advice. Afterwards plaintiffs (with the approval of the welfare authorities) deeded their remaining undivided one-half interest in the ranch to defendants, reserving only a life estate in the house and one-acre garden and orchard.[1] The deed was executed by plaintiffs without consideration and for the sole purpose of avoiding a $53-a-year reduction in their public assistance. Thus, the parties continued to jointly use the land pursuant to their initial agreement and apparently remained close friends until 1962.

In 1962 defendants informed plaintiffs that they wanted to enlarge plaintiffs' home on the ranch to make room for defendants. Plaintiffs consented, and to facilitate the remodeling they moved into a smaller dwelling (also located on the ranch) called "the cabin." Defendants then made substantial improvements to the house, expending their own funds in doing so. However, when the remodeling was completed defendants moved into the home by themselves, denying that there had been any agreement of joint occupancy. They also denied that they were obligated to care for plaintiffs in their

---

[1] The deed which the Lehmanns executed in 1953 reads in pertinent part as follows:
"Reserving a LIFE TENANCY in the house and the one acre garden and orchard now occupied by the grantors, and a right to use the road from said house to the county road. Said house and acre of land is located in the approximate center of Lot Two in the Northeast quarter NE¼ of Section one, Township Six South, Range 19 East M.D.B. & M."

old age and made no further payments toward plaintiffs' support.

In 1965 Mrs. Lehmann became ill from the stress and tension caused by Mrs. Kamp's antagonism and the poor living conditions in the cabin. Thus, in June of that year plaintiffs moved out of the cabin and rented a small home several miles from the ranch. This lawsuit followed. However, Mrs. Lehmann died on March 3, 1967, before final judgment was entered.

At the conclusion of the court trial the judge made findings of fact essentially similar to the facts recited herein. He concluded that the 1946 deed was valid and effective but that the 1953 deed was void because the description of the life estate "is uncertain and cannot be made certain from parole evidence." Then the court declared that plaintiff Adolph Lehmann had an undivided one-half interest in the 106-acre ranch (with the exception of the residence which defendants remodeled in 1964) and ordered the property partitioned accordingly. The court also found that defendants breached their agreement to provide financial support and physical care for plaintiffs during their old age and fixed damages at $5,000. Defendants have appealed.

Defendants apparently do not quarrel with the court's finding that they acquired an undivided one-half interest in the plaintiffs' ranch in consideration of their promise to provide plaintiffs with financial help and physical care during their old age, and that they breached this promise. Moreover, they do not even challenge the court's finding that the 1953 deed was executed by plaintiffs without consideration. On the contrary, defendants simply assert that the uncertainty in the description of the life estate reserved by plaintiffs in the 1953 deed was made certain by the evidence, and, if not, it is this reservation that is void, not the entire deed. In short, while apparently conceding that there was no consideration for the 1953 deed, and that it was executed by plaintiffs for the sole purpose of avoiding a reduction in their welfare payments, defendants have the temerity to argue that if the description of the life estate is uncertain, it is the reservation, not the entire deed, that is void, and they are entitled to the windfall.

It is of course arguable, as defendants maintain, that the uncertainty in the 1953 deed could have been made certain by extrinsic evidence. The deed identifies the life estate as the "house and one acre garden and orchard now occupied by the

grantors. . . ,'' and an indefinite description of real property may be rendered definite and certain by reference in the deed to its ownership and use at the time the deed is executed (15 Cal.Jur.2d, Deeds, § 163, p. 566).[2] However, we do not find it necessary to deal with this question,[3] because in any event the court's judgment is correct under a resulting trust theory. In other words, it is absolutely clear from the court's findings of fact and conclusions of law (which are amply justified by the evidence) that even if the 1953 deed was not void, it gave rise to a resulting trust in the one-half interest in the ranch which plaintiffs conveyed to defendants and that plaintiffs were the beneficiaries of this trust. Thus, the court's judgment ordering a partition of the ranch, in essence, terminated the trust and is correct. ▮ It is the rule that if a judgment is right on any applicable theory, it must be sustained on appeal (*Sears* v. *Rule,* 27 Cal.2d 131 [163 P.2d 443]; *Kuhn* v. *Ferry & Hensler,* 91 Cal.App.2d 805 [206 P.2d 1]).

Our reasons are these: When the 1953 deed was executed by plaintiffs, defendants had already acquired an undivided one-half interest in plaintiffs' ranch in consideration for their promise to support plaintiffs and to provide them physical care during their old age. Moreover, the second deed was executed by plaintiffs to obviate a reduction in their public assistance, a reduction which they were willing to accept but which they rejected at defendants' insistence. Finally, when the 1953 deed was executed, it was the intention of the parties that they would continue to have joint use of the ranch, according to the terms of the initial agreement; and this joint use continued until 1962. Thus, plaintiffs conveyed their remaining undivided one-half interest in the ranch to defendants in 1953 without consideration, without intending to convey the beneficial interest, and obviously without a full comprehension of the nature of the document that they signed.[4] ▮ It is

[2]See also *Vezaldenos* v. *Keller,* 254 Cal.App.2d 816, 823 [62 Cal.Rptr. 808], wherein we stated that: ''. . . [A] description of real property is sufficient even though the terms may be abstract and of a general nature, if with the assistance of external evidence the description, without being contradicted or added to, can be connected with and applied to the very property intended to the exclusion of all other property.''

[3]We merely observe that the record is vague as to the precise location and dimensions of the orchard and garden, and that the defendants were given the opportunity to produce additional evidence on this issue and neglected to do so.

[4]The court made the following findings:

''No consideration for the execution of this 1953 document was furnished by the defendants or received by the plaintiffs. . . .

firmly settled that a resulting trust arises by operation of law, under circumstances showing that the transferee was not intended to take the beneficial interest (*Lezinsky* v. *Mason Malt Whiskey Distilling Co.*, 185 Cal. 240 [196 P. 884] ; *Seabury* v. *Costello*, 209 Cal.App.2d 640 [26 Cal.Rptr. 248] ).

■ Defendants' final thrust is that it was error for the trial court to partition the ranch in the instant case, because plaintiffs promised to leave it to defendants upon their deaths. They assert that a court may not partition property if it defeats the rights of joint owners which have arisen by agreement (*Miranda* v. *Miranda*, 81 Cal.App.2d 61 [183 P.2d 61] ).[5] However, defendants' argument ignores the fact that they promised to provide the Lehmanns with financial support and physical care during their old age, a promise which the court found they breached. Consequently, plaintiffs were no longer obligated to leave the ranch to defendants, and when the trial judge allowed defendants to retain the undivided one-half interest which they acquired in 1946 and full ownership in the house which they improved in 1962, he was fairer to defendants than our view of the evidence entitled them to expect.

The judgment is affirmed.

Conley, P, J., and Stone, J., concurred.

---

"The intention of the parties on executing this document was to protect the Lehmanns and was to continue the terms of the original oral agreement without modification, including the right of survivorship, the right of the plaintiffs to have a permanent residence on the property, and the right for continued joint use of the entire property. The Lehmanns did not understand the nature of the document, nor the effect it would have on the use of the property."

[5]For example, an oral understanding that one joint tenant was to continue to live on the property as his home was held to defeat a right to parition the property (*Rowland* v. *Clark*, 91 Cal.App.2d 880 [206 P.2d 59] ).